IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEIGH COLBY, D.D.S., an individual; OCD
INVESTMENTS, LLC, an Oregon limited
liability company; and OREGON DENTAL,
P.C.,

        Plaintiffs,

    v.

INTERDENT SERVICE CORPORATION,

        Defendant.

_____

Case No. 6:18-cv-781-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiffs bring a breach of contract claim against defendant Interdent Service Corporation. Interdent moves to dismiss. As discussed below, Interdent's motion to dismiss, ECF NO. 6, is GRANTED.

## BACKGROUND[1]

On December 22, 2015, plaintiffs and Interdent executed an Asset Purchase Agreement (APA) outlining Interdent's purchase of plaintiffs' dental practice. Compl. ¶ 5. Interdent purchased the practice for $2,834,484 in cash. APA § 1.04-1. The APA also contained an "Earnout Payment" setting out Interdent's promise to pay plaintiffs a payment calculated on

---

[1] At the motion to dismiss stage, I assume the truth plaintiffs' allegations.

1 – OPINION AND ORDER

revenues earned by the practice in second year following the execution of the APA. Compl. ¶ 7. Specifically, Interdent would pay plaintiffs an earnout based on a sliding scale ranging from $0 if net revenues were lower than $4,800,000 up to a maximum of $500,000 if revenues hit $5,300,000 or more. APA ¶ 1.06-1. Interdent's alleged breach of the APA as related to the earnout payment forms the basis of the dispute at issue here:

> As of the effective date of the APA, Plaintiffs were operating the Practice in a manner that, if continued, would have resulted in a maximum Earnout Payment of $500,000. For approximately five months, the Practice continued in a similar fashion. However, Defendant made several changes to the Practice that had a substantial impact on the bottom line and reduced the Practice's revenue to a point where Plaintiffs would not be entitled to any Earnout Payment under the formula contained in the APA.

Compl. ¶ 9.

Specifically, Interdent: (1) cancelled a dental services financing plan used by over half of the practice's patients, resulting in a substantial drop in appointments and revenue; (2) cancelled an agreement with a "major healthcare insurance plan" resulting in a substantial drop in patients and revenue; and (3) failed to pay dentists employed by the practice as agreed in employment agreements, resulting in a loss in revenues as at least two "high producing dentists" left the practice. Compl. ¶¶ 9-10.

> As alleged herein, since the effective date of the APA, Defendant has taken several steps that were intended to and have caused the Plaintiffs Earnout Payment potential to drop to $0 when it had been on track to be paid out at the maximum amount of $500,000. Defendant is in breach of the APA and Plaintiffs are entitled a judgment against Defendant in the amount of $500,000.

Compl. ¶ 11.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic*

2 – OPINION AND ORDER

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Interdent moves to dismiss the lone claim for breach of contract, arguing plaintiffs fail to allege Interdent acted in bad faith with the requisite intent to avoid the earnout payment. I agree. The APA outlines the agreement of the parties as to Interdent's operation of the practice, including its duties and obligations as to the earnout:

> **1.06-4 Post-Closing Operation of the Dental Practice.** Subject to the terms of this Agreement, after the Closing, InterDent shall have sole discretion with regard to all matters relating to the operation of the Dental Practice. InterDent shall have no obligation to operate the Dental Practice to achieve or maximize any Earnout Payments; provided that InterDent shall operate the Dental Practice in good faith and not in a manner intended to avoid making an Earnout Payment.

Under Intedent's interpretation, it can breach this section of the APA only by operating the practice in bad faith; that is, "in a manner intended to avoid making an Earnout Payment." In contrast, plaintiffs argue:

> APA ¶ 1.06-4 says in relevant part that Defendant "shall operate the Dental Practice in good faith and not in a manner intended to avoid making an Earnout Payment." The quoted language creates dual contractual duties. First Defendant must operate the Practice in good faith. Second, and separate, Defendant must not operate the Dental Practice "in a manner intended to avoid making an Earnout Payment." . . . Plaintiffs allege violations of the first duty, the duty to act in good faith.

Pl.'s Resp., 6.

Noting the earnout provision above is "Subject to the terms of this Agreement," plaintiffs point to ¶ 5.02 of the APA, which states, "Each party will use its or his or her best efforts to effect the transactions contemplated by this Agreement[.]" Plaintiffs argue "that Defendant has sole discretion to determine how to run the Dental Practice, but that discretion is subject to the broader requirement that it use its best efforts in effecting the Earnout Payment transaction." Pl.'s Resp., 8.

In arguing the general "best efforts" language from ¶ 5.02 governs the earnout provision, plaintiffs ignore ORS § 42.40 which provides that "when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it." ¶ 5.02 does not mention the earnout payment. ¶ 1.06-4, however, is contained within ¶ 1.06, titled "**Calculation of Earnout.**" And ¶ 1.06-4 specifically provides for how Interdent shall operate the practice in regards to the earnout. It provides Interdent "with sole discretion with regards to all matters relating to the operation of the" practice, and clearly states that in operating the practice, Interdent has "no obligation to operate the Dental Practice to achieve or maximize any Earnout Payments;" provided that it operate the practice "in good faith and not in a manner intended to avoid making an Earnout Payment." In other words, the parties agreed that Interdent could operate the practice as it pleased, while plaintiffs were protected against Interdent intentionally attempting to avoid or lessen an earnout payment. As ¶ 1.06-4 is

4 – OPINION AND ORDER

unambiguous, the analysis ends. *Arnett v. Bank of America, N.A.*, 874 F.Supp.2d 1021, 1031 (D. Or. 2012); *Pacific First Bank v. new Morgan Park Corp.*, 319 Or. 342, 248 (1994) ("Words or terms of a contract are ambiguous when they reasonably can, in context, be given more than one meaning.").

As pleaded, the allegations do not give rise to a claim that Interdent operated the practice in a manner intended to avoid making an earnout payment. Plaintiffs confirm that their claim is based on allegations that by making certain operating decisions—i.e., cancelling the financing and insurance plans, and not paying dentists according to their employment agreements—Interdent violated the "broad requirement that 'parties act in an objectively reasonable manner in the performance and enforcement of their contracts.'" Pl.'s Br., 6-7 (quoting *U.S. Nat'l Bank of Oregon v. Boge*, 211 Or. 500 (1991)). But in relying on an implied duty of good faith, plaintiffs overlook the express terms of the APA, and therefore the reasonable expectations of the parties, on this subject. *See Pacific First Bank*, 319 Or. at 353 ("We emphasize, however, that the doctrine of good faith is to be applied in a manner that will 'effectuate the reasonable contractual expectations of the parties.'") (quoting *Best v. U.S. Nat'l Bank*, 303 Or. 557, 563 (1987)). As demonstrated above, the APA granted Interdent wide latitude in operating the practice. It explicitly provided that Interdent need not operate the practice with an eye towards making sure plaintiffs achieved, let alone maximized, the earnout. The APA only prevented Interdent from operating the practice in bad faith; i.e., "in a manner intended to avoid making an Earnout Payment." ¶ 1.06-4. "[T]he duty of good faith cannot serve to contradict an express contractual term[.]" *Uptown Heights Associates v. Seafirst Corp.*, 320 Or. 638, 645 (1995).

Plaintiffs fail to include any specific allegation that Interdent undertook the allegedly unreasonable acts with the intention of depriving plaintiffs of an earnout payment. "When one

party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith." *Best*, 303 Or. at 563 (1987). Although plaintiffs disagree with certain operating decisions made by Interdent, the APA explicitly allowed Interdent to run the practice as it saw fit. As discussed above, plaintiffs do not allege Interdent acted with the intention of avoiding an earnout payment.

As plaintiffs request leave to amend, they are granted 14 days to file an amended complaint. That said, I note plaintiffs face an uphill battle to demonstrate Interdent acted with the intention of denying plaintiffs an earnout payment. As noted by Interdent, the earnout payment was structured to be in the best interests of both parties. If net revenues were below $4,800,000, plaintiffs were not entitled to any earnout. ¶ 1.06-1(a). But if the practice obtained net revenues of $5,300,000 (the lowest amount needed to trigger the maximum earnourt payment), Interdent owed plaintiffs only the $500,000 difference in net revenues between the two amounts. While all net revenues do not translate to gross profits, the court awaits plaintiffs' additional specific factual allegations supporting the theory that Interdent intentionally drove down revenues on its new $3,300,000 practice to avoid paying an earnout payment structured to be in the best interests of each party. As it stands, plaintiffs current theory that "Defendant's pattern of conduct, after taking control of the Dental Practice, drove a valuable and historically successful practice into the ground," Pl.'s Resp., 9, resembles unwise business decisions rather than intentional acts to drive away customers and lower net revenues to avoid triggering the earnout.

## CONCLUSION

Interdent's motion to dismiss, ECF No. , is GRANTED. Plaintiffs are granted 14 days to file an amended complaint.

IT IS SO ORDERED.

DATED this 1st day of August, 2018.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge